460

## WM. S. PHILLIPS CONST. CO. et al. v. EFROSS.

### No. 5526.

Court of Appeals of District of Columbia.
Argued Nov. 1, 1932.
Decided Feb. 6, 1933.

Milton D. Campbell, of Washington, D. C., for appellant.

Morris Simon, Lawrence Koenigsberger, Eugene Young, and Selig C. Brez, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

Appeal from a decree in favor of appellee as subcontractor for painting a certain building while in process of erection.

In the bill filed by appellee as plaintiff in the lower court he alleged that the Harvard Hall Apartment House Company was the owner of certain real estate situate in the District of Columbia, and on November 28, 1928, it entered into a written contract with the Wm. S. Phillips Construction Company, hereinafter called the defendant, as general contractor, for the construction of an apartment house upon the premises; that on the same day a contract was executed by the plaintiff, under the name of Apex Decorating Company, with the defendant, whereby plaintiff agreed to furnish the material and perform all the work for the painting of the new building for the price of $12,670; that plaintiff duly entered upon the performance of the contract and continued to prosecute the same until Saturday, the 10th day of August, 1929, when the union workmen employed by him refused to proceed further with the work; that on the same day plaintiff offered to resume work on Monday, August 12, 1929, with nonunion labor, but the defendant informed him that he would not be permitted to complete the work with nonunion labor, and that thereupon on August 12, 1929, the defendant without the knowledge or consent of plaintiff wrongfully broke open the storeroom allotted to plaintiff at the apartment house and took possession of plaintiff's materials and tools and with a staff of workmen completed the job. That in the course of the work performed by plaintiff he had furnished labor and materials of the value of $8,677 and received in part payment thereof the sum of $3,555.27, and he prayed that he be given a decree in the sum of $9,614.73 against the defendant and for the enforcement of a mechanic's lien against the apartment house.

In its answer to the bill the defendant alleged that on November 28, 1928, it had, as general contractor, entered into a written contract with the apartment house company for the construction of the building, and later had entered into a written contract with plaintiff for the painting of the building, and that the subcontract contained the following provisions:

"The subcontractor agrees to complete the several portions and the whole of the work herein sublet by the time or times following: As rapidly as conditions on the job permit and in such manner as not to interfere with the work of other contractors."

"To be bound to the contractor by the terms of the agreement, general conditions, drawings, and specifications, and to assume towards him all the obligations and responsibilities that he by those documents assumed towards the owner."

Defendant admitted that plaintiff began to furnish labor and materials under the con-

tract and continued so to do until Saturday, August 10, 1929, when the union workmen employed by him on the job refused to proceed further therewith; that on the same day plaintiff offered to resume work on the job on the following Monday, August 12, 1929, with nonunion labor, but defendant refused to permit him to complete the work with such labor, because at the time of the signing of the contract between plaintiff and defendant plaintiff was advised that only union labor could be employed upon the job, and it was only after plaintiff assured defendant that he would employ union men only that he was awarded the painting contract, and because if plaintiff should put nonunion men on the job all union men employed thereon would quit work and prevent defendant and other subcontractors from carrying out their contracts upon the building; that this would be a violation of plaintiff's agreement with defendant to complete the work in such "manner as not to interfere with the work of other contractors." Defendant further alleged that on August 10, 1929, the owner of the building advised defendant that if the work on the building stopped it would, after a three days' notice in writing, take over the work and complete the job as provided by the terms of the contract between it and defendant, and on August 12, 1929, defendant received written notice to that effect from the owner, all of which was well known to the plaintiff. Defendant alleged that on August 10, 1929, the plaintiff stated that he could go no further with the job, and on August 12, 1929, plaintiff removed his equipment and materials except about $50 worth of paint from the building. Defendant alleged that on August 12, 1929, after the plaintiff had abandoned the job defendant employed union painters and completed the job. Defendant denied that plaintiff had furnished labor and materials of the value of $8,677 under the contract, but admitted that defendant had paid the plaintiff the sum of $3,555.27, and no more. Defendant alleged that it was compelled to take over the work and complete the painting at a total cost of $16,709.14, wherefore it prayed judgment for the sum of $4,039.14, being the difference between the contract price and the actual cost of completing the work in accordance with the terms of the contract.

The case was submitted to the court upon evidence, and the court found in favor of the plaintiff, and entered a decree in his favor in the sum of $5,453.60. This appeal was then taken.

The appellant assigns as error the ruling of the trial court rejecting evidence tendered by appellant at the trial to show that it was the custom of members of the union to employ only union men, and that plaintiff before the contract was signed and during the time of the work was a member of the local painters' union, and held himself out as a member of the union to the defendant at and before the signing of the contract between them. Also that the court rejected evidence tending to prove that plaintiff before the execution of the contract had told defendant that he would employ only union painters, and that while plaintiff worked on the building he actually employed only such painters. Also that the court refused to permit defendant to cross-examine the plaintiff as to union rules and regulations governing the employment of union men.

These assignments of error, however, do not appear to us to be controlling in this appeal. The record discloses that on August 10 (Saturday) plaintiff became involved in a dispute with the painters' union, and the union thereupon called their members off of the job; that fifteen or twenty minutes later plaintiff told defendant's representative, Mr. Phillips, that he would proceed with nonunion painters on the following Monday; that he was told he could not do this, because the other workmen would strike; that plaintiff then said, "If you will give me time I will straighten it out with the union because the union did not take proper action"; that Mr. Phillips answered that he could not wait, and that he had men all prepared to take the job over; that plaintiff talked with Mr. Phillips about the matter on the following day (Sunday), and told him, "I can either proceed with nonunion men or straighten it out with the union, I am sure, if I telegraph headquarters"; that Phillips answered, "I can not wait to do it with union men"; and on the next day, August 12, defendant took over the job without plaintiff's consent.

It appears that the written contract between the plaintiff and the defendant contains the following provisions: "The contractor agrees (d) to be bound to the subcontractor by all the obligations that the owner assumes to the contractor under the agreement, general conditions, drawings, specifications, and by all the provisions thereof affording remedies and redress to the contractor from the owner."

The written contract between the owner and the defendant as general contractor con-

tains the following provision: "If the contractor should neglect to prosecute the work or fail to perform any provisions of this contract, the owner, after three days' written notice to the contractor, may, without prejudice to any other remedy he may have, make good such deficiencies and may deduct the cost thereof from the payment then or thereafter due the contractor. Provided, however, that the architect shall approve both such actions and the amount charged to the contractor."

Under these provisions the owner was not entitled to resume any part of the work until after three days' written notice to defendant. It follows that plaintiff was entitled to a similar written notice before defendant could rightfully take over the work from plaintiff. The record discloses that no such written notice was ever served upon plaintiff, but that defendant, without giving plaintiff such notice, took over the work at a time when plaintiff had not abandoned the job.

We do not overlook the fact that neither the plaintiff's bill nor the lower court's decision is based specifically upon this point. Nevertheless, it is distinctly presented by the record before us and is argued in appellee's brief, and in our opinion it conclusively sustains the decree entered below.

The decree is therefore affirmed, with costs.